**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN SMITH, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 22-4258 |
| | : | |
| v. | : | |
| | : | **OPINION** |
| HUDSON COUNTY JAIL & | : | |
| REHABILITATION CENTER, et al. | : | |
| | : | |
| Defendants. | : | |

**CECCHI, U.S.D.J.**

Pro se plaintiff John Smith, a pretrial detainee at Hudson County Jail (the "Jail"), seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 stemming from allegedly unconstitutional conditions related to COVID-19 protocols at the Jail and his alleged exposure to the COVID-19 virus. ECF No. 1. Smith also moves to proceed *in forma pauperis* ("IFP"). ECF No. 3. For the reasons below, Smith's motion to proceed IFP is granted, and his Complaint is dismissed without prejudice.

**I.      IFP**

The Prison Litigation Reform Act of 1995, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) (the "PLRA"), establishes requirements for prisoners who are attempting to bring a civil action IFP. Specifically, a prisoner seeking to file a civil action IFP must submit an affidavit, including a statement of all assets, stating that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of the

complaint. 28 U.S.C. § 1915(a)(2). Here, Smith has complied with the PLRA's requirements and demonstrated indigence. ECF No. 3. Accordingly, IFP status is appropriate, and Smith's IFP motion is granted. The Court will now proceed to screen the Complaint. *See* 28 U.S.C. § 1915A(a).

## II.    THE COMPLAINT

### A.    Factual Allegations

The Complaint contains the following factual allegations, which, for screening purposes, the Court accepts as true.

Smith arrived at the Jail on February 18, 2022. He "remained in [h]olding for 4 days with no mask provided by [the] facility"; however, he had the mask he came in with. ECF No. 1 at 5. He "[n]ever received cleaning supplies in holding," *id.*, and he never quarantined. *Id.* at 9. He "was moved to A-3 [and] housed in a pod setting (two-man cell)." *Id.* There were "[n]o disinfects for [his] cell, limited mask[s], no hand sanitizer." *Id.* Smith was on A-3 for three months, "with no incidents of Covid until May 13, 2022," when "Cumberland inmates were shipped to Hudson County." *Id.* Smith was "mixed in" with the Cumberland inmates on a "new tier" in a "[d]ormitory setting." *Id.* "These inmates came straight from [b]ooking to the new tier and [were] not quarantined either." *Id.*

Smith "contracted Covid weeks later when results came back from a lab indicated [he] had Covid." *Id.* The "testing procedure was non-productive because when [he] was sick and complaining no one came to [his] aid." *Id.* "When [he] felt better after 4 days[,] [his] results came from the lab indicating [he] had Covid." *Id.* Smith notes that "they do not do enough rapid test[ing]." *Id.*

Smith was "removed to H-1 South on June 9, 2022." *Id.* He was there for 6 days after which he was "returned to population." *Id.* He was "never tested before being put back in 4 North (Echo)." *Id.* Twelve inmates "were taken from the new tier of mixed inmates" and "[a]ll 12 have been returned to . . . . 4 North Echo with no new linen[,] just a mask. Still no hand sanitizer, bleach, disinfectant, etc." *Id*. Additionally, "[a]ll defendants ignored CDC guidelines, protocols[,] and interims." *Id.*

Two months after Smith filed his complaint, he filed a letter containing "evident[i]al factors in support of [his] civil action." ECF No. 4 at 1. Smith describes, *inter alia*, the layout of E-4-North, "a dormitory unit that holds up to over (60) sixty detainees at it[s] max capacity," and notes that "one officer works the entire unit." *Id.* at 3. He states that "cleaning supplies are kept 'locked in a closet' . . . [u]nless assigned clean up workers are allowed to clean th[ei]r assigned 'common areas.'" *Id.* at 4. He lists the cleaning implements and chemicals kept in the supply closet, asserts that the chemicals are "watered down," and states that detainees do not have access to the cleaning supplies "as needed." *Id.* at 4–5. Rather, "clean up workers at 1:00pm and 9:00pm are only provided with chemicals to clean during those (2) time periods, only. Detainees aren't allowed at anytime to obtain chemicals to clean out of the closet." *Id.* at 4 (capitalization and quotations omitted). Smith also asserts that the restroom contains the "strong stench of urine" even after the workers clean "once or twice daily," and the showers are only "cleaned once a day." Smith alleges that "[d]etainees normally have to steal chemical[s] to clean." *Id.* at 5.

Smith further asserts that "masks aren't worn by [the] officer at times and detainees on the E-4-North unit never wear masks unless they leave the unit." *Id*. "Masks aren't always available," and there is "no consistency when [testing is] provided ranging from weekly, bi-weekly[,] or even

many weeks longer." *Id.* And the testing is done by "civilians/outside contractors, who don't provide directions or assure testing is done properly." *Id.* (quotations omitted).

### B. The Claims

Smith asserts claims against (1) Oscar Aviles, Warden,[1] for "fail[ing] to implement any effective strategy or policy to protect inmates from Covid-19," which resulted in Smith contracting the virus, becoming "very sick," and developing "long Covid" (ECF No. 1 at 4, 8); (2) John Doe Correctional Officers 1–10 for failing to "intervene to protect inmates rights in the jail during Covid-19" (*id.* at 4, 8); (3) medical department members John and Jane Does 1–10 for deliberate indifference to Smith's "serious medical condition causing him severe pain and suffering likely permanent physical damage" (*id.* at 7); and (4) Hudson County Freeholders as policymakers who have "final policy making authority" regarding the "policies and programs governing wardens and other personnel at the jail" (*id.* at 6).

Smith wants "the courts to implement an injunction to assure that the [Jail] is complying with CDC protocols," and he would "like a Special Master to look into [his] allegations." *Id.* 9–10. He wants "mask, hand sanitizer, bleach, isolation, cohorting, and any and all things that can be done to combat this deadly virus." *Id.* at 10. He also seeks "monetary compensation . . . for the deliberate indifference and state created [d]anger." *Id.*

---

[1] On the prisoner civil rights complaint form used by Smith, he lists "Hudson County Jail Rehabilitation Center: Oscar Aviles" as one defendant. ECF No. 1 at 4. However, the ECF caption for this case lists the Jail and Aviles as separate defendants. While it appears that Smith intended Aviles as the defendant and not the Jail, in an abundance of caution, the Court addresses liability on the part of both.

## III.    DISCUSSION

### A.    Screening Standard

The PLRA requires district courts to review complaints in civil actions filed by prisoners. *See* 28 U.S.C. § 1915A(a).  District courts must dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).  That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Pro se pleadings, as always, will be liberally construed.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**B.** **Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of

constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in such officer's judicial
> capacity, injunctive relief shall not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the

violation of a right secured by the Constitution or laws of the United States, and second, that the

alleged deprivation was committed or caused by a person acting under color of state law.  *See*

*Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*,

487 U.S. 42, 48 (1988).

A local government entity is a "person" for purposes of § 1983, *Bd. of the Cnty. Comm'rs*

*of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997), and may be liable under § 1983 if it has

a policy or custom that violates a plaintiff's constitutional rights.  *Monell v. Dep't of Soc. Servs. of*

*City of N.Y.*, 436 U.S. 658, 694 (1978); *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122

(1992) ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It

is only liable when it can be fairly said that the city itself is the wrongdoer."); *Sanford v. Stiles*,

456 F.3d 298, 314 (3d Cir. 2006) ("[A] municipality may be held liable [under § 1983] only if its

policy or custom is the 'moving force' behind a constitutional violation.").

A plaintiff has the burden of showing that a government policymaker "is responsible by

action or acquiescence for the policy or custom."  *Jiminez v. All Am. Rathskeller, Inc.*,

503 F.3d 247, 250 (3d Cir. 2007); *see also Warren v. Camden Cnty. Corr. Facility*, No. 16-6766,

2017 WL 168915, at *2 (D.N.J. Jan. 17, 2017) ("Plaintiff must plead facts showing that the relevant policy-makers on the Camden County Board of Freeholders are 'responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'" (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990))). The plaintiff need not specifically identify a responsible decisionmaker because practices that are considered custom or policy under *Monell* are ascribed to municipal decisionmakers. *Bielevicz*, 915 F.2d at 850.

A supervisor may not be held vicariously liable for the actions of subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222–23 (3d Cir. 2015). Thus, to adequately plead a plausible § 1983 claim against a supervisor, a plaintiff must plead facts which, if proven, would show that the supervisor was personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be done in one of two ways. First, a supervisor can be liable if he or she enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 35–36 (2010). Second, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

Finally, a correctional facility is not a "person" acting under color of state law and, therefore, is not amenable to suit under § 1983. *Rolle v. Essex Cnty. Corr. Facility*, No. 21-15198, 2022 WL 1044968, at *3 (D.N.J. Apr. 7, 2022) (Essex County Correctional Facility is not a

7

"person" subject to § 1983 liability); *Harris v. Hudson Cnty. Jail*, No. 14-6284, 2015 WL 1607703, at *5 (D.N.J. Apr. 8, 2015) (Hudson County Jail is not a "person" amenable to suit under § 1983). Accordingly, to the extent Smith intended to assert claims against the Jail, such claims must be dismissed with prejudice.

### C.    Analysis

Construing Smith's complaint liberally, he appears to assert claims for unconstitutional conditions of confinement arising from his exposure to the COVID-19 virus while detained, and deliberate indifference to his serious medical needs on the grounds that he contracted COVID-19 and medical staff did not adequately treat him.

### 1.    Conditions of Confinement

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), and is violated when a pretrial detainee is subjected to punishment that is not reasonably related to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). For the conditions of confinement "to rise to the level of an Eighth Amendment violation, it must 'result in the denial of the minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835) (internal quotation marks and citation omitted). "Thus, prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga*, 806 F.3d at 226

(internal quotation marks and citation omitted); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of the inmates" (internal quotation marks and citation omitted)).  "A failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious' and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'" *Id.* (alterations in original) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (internal quotation marks and citation omitted).  To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson,* 501 U.S. at 298–99; *Stevenson*, 495 F.3d at 68 ("[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate

non-punitive government purpose, or when the restriction is excessive in light of that purpose."

(alteration in original) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999))).

The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention facility's protocols, "courts must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation.  *Id*. at 326 (internal quotation marks and citations omitted).

The gravamen of Smith's complaint and supplemental letter submission (ECF No. 4) is that he is dissatisfied with the Jail's COVID policy and cleaning schedule, and he believes detainees should have unrestricted access to cleaning chemicals and supplies.  These allegations do not support a finding that the defendants acted with a culpable state of mind, nor do the allegations rise to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement.

At the outset, to the extent Smith claims his constitutional rights were violated merely by having been exposed to the virus, or by being at an increased risk of exposure to the virus, the allegation is insufficient because exposure alone does not violate the Constitution.  *See Hope*, 972 F.3d at 330 (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates); *Bennett v. Aviles*, No. 22-7003, 2022 WL 17887227, at *3 (D.N.J. Dec. 23, 2022) ("Bennett's one-sentence allegation . . . that he tested positive for COVID . . . is insufficient to state a claim for unconstitutional conditions of confinement.  Millions, of course,

have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation.").

Aside from potential exposure, Smith also alleges masks are not always worn or available, detainees do not have access to cleaning supplies or hand sanitizer, and detainees were not tested or quarantined when Smith believes such testing or quarantining was warranted. *See, e.g.*, ECF No. 1 at 9. These allegations do not establish that prison officials consciously disregarded a serious risk to Smith's health or safety. Smith does not allege, for example, that no testing, quarantining, or cleaning is occurring. To the contrary, his complaint establishes that the Jail is attempting to take measures—such as providing masks, testing, quarantining, and daily cleaning—aimed at mitigating the threat of COVID-19. *See Hope*, 972 F.3d at 330 (noting the "challenges inherent in the detention setting"). For example, Smith alleges that he was tested for COVID-19 when he was not feeling well; he was removed from "population" after testing positive; 12 detainees were "returned to 4 North Echo" with masks; and workers clean twice a day. ECF No. 1 at 9, ECF No. 4 at 4.

Further, imperfections in masking, testing, and quarantining procedures—particularly in the challenging environment of a detention center—do not, without more, amount to unconstitutional conditions of confinement or punishment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."); *Pumba v. Kowal*, No. 22-2082, 2022 WL 2805520, at *5 (E.D. Pa. July 18, 2022) ("Pumba alleges that Sergeant Kowal permitted a pod worker who tested positive for COVID-19 to clean Pumba's cell block without wearing a

mask and presumably exposing Pumba to COVID-19.  These allegations are insufficient to allege

a plausible constitutional claim that Sergeant Kowal failed to adequately protect him from

exposure to COVID-19."); *Chapolini v. City of Phila.*, No. 22-284, 2022 WL 815444, at *15

(E.D. Pa. Mar. 17, 2022) ("Chapolini also does not sufficiently allege that prison officials at CFCF

knew of and disregarded an excessive risk to his health and safety.  Instead, he only states that he

contracted COVID-19 and that he likely got it because quarantine protocols at CFCF were either

inadequate or improperly followed.  This is also inadequate to state a plausible claim because his

COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional

violation.").

Additionally, Smith's assertions that cleaning supplies are watered down, testing is done

improperly, and "[a]ll defendants ignored CDC guidelines, protocols[,] and interims" (ECF No. 1

at 9; ECF No. 4 at 4–5), are conclusory and insufficient to support an unconstitutional conditions

of confinement claim.  *See Iqbal*, 556 U.S. at 678 (complaint does not suffice if it offers merely

"'naked assertion[s]' devoid of 'further factual enhancement'" (alteration in original) (quoting

*Twombly*, 550 U.S. at 557)).

Moreover, a policy requiring cleaning chemicals to be kept in a locked closet and

prohibiting unrestricted detainee access to those chemicals is not excessive in relation to the Jail's

legitimate interest in maintaining safety while managing the spread of COVID-19.  *See Bell

v. Wolfish,* 441 U.S. 520, 535 (1979) (institutional security and effective facility management are

valid governmental objectives that can justify restrictions on pretrial detainees); *Youngberg

v. Romeo*, 457 U.S. 307, 321 (1982) (under the Due Process Clause, "whether respondent's

constitutional rights have been violated must be determined by balancing his liberty interests

against the relevant state interests"); *Cooper v. Miller*, No. 20-2430, 2022 WL 4654852, at *7

(M.D. Pa. Sept. 30, 2022) ("Plaintiff's disagreement with the steps that have been taken by Defendants at SCI Rockview to mitigate the risk of his exposure to COVID-19 is simply insufficient to plausibly allege a constitutional violation. . . .").

In short, Smith's complaint, as drafted, does not establish that his conditions of confinement amounted to unconstitutional punishment rather than good faith efforts to reduce the spread of COVID-19 and maintain safety and security at the Jail. Accordingly, this claim must be dismissed.

### 2.    Deliberate Indifference to Serious Medical Need

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atl. City*, 179 F. Supp. 3d 387, 403 (D.N.J. 2016). To state such a claim, a pretrial detainee must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale*, 318 F.3d at 582. Where a facility has taken concrete steps towards mitigating the medical effects of COVID-19, "a prisoner will fall 'well short' of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely 'eliminate all risk' of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have." *Jacobs v. City of Phila.*, No. 22-1956, 2022 WL 4225621, at *2 (E.D. Pa. Sept. 13, 2022) (quoting *Hope*, 972 F.3d at 330–31).

As an initial matter, it is not clear that Smith has satisfied the first *Estelle* prong, *i.e.*, that he plausibly alleged "serious" medical need. The Third Circuit has defined a "serious" medical need as: (1) one that "has been diagnosed by a physician as requiring treatment"; (2) one that is "so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one

for which the "denial of treatment would result in the unnecessary and wanton infliction of pain"

or a "life-long handicap or permanent loss." *DeJesus v. Del. through Del. Dep't of Corr.*, 833 F.

App'x 936, 940 n.4 (3d Cir. 2020) (internal quotations and citations omitted).  When evaluating

this element, courts consider factors such as the "severity of the medical problems, the potential

for harm if the medical care is denied or delayed and whether any such harm actually resulted from

the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

Smith's complaint, as pleaded, does not contain facts establishing the "serious condition"

element.  Smith alleges that he became "very sick," and developed "long Covid."  ECF No. 1 at 4.

This conclusory statement, without more, lacks sufficient detail to support an allegation of a

serious condition.  Moreover, Smith alleges that "when [he] was sick and complaining no one

came to [his aid]," but "[he] felt better after 4 days."  *Id.* at 9.  Smith does not describe the nature

or impact of his symptoms; he does not describe any communications he had regarding his

symptoms, including the frequency, content, with whom he communicated, or replies (if any) that

he received; he does not state whether he was "diagnosed by a physician as requiring treatment,"

or whether he had a preexisting underlying condition or extreme symptoms such that the need for

hospitalization or other intervention would have been obvious to a layperson; and he does not

describe any symptoms he may still be experiencing, how often he may be experiencing those

symptoms, or whether the alleged denial of treatment resulted in "a life-long handicap or

permanent loss." *DeJesus*, 833 F. App'x at 940 n.4.

In short, the statement of claims section of the complaint appears to allege that Smith fell

ill with COVID-19 symptoms (although the symptoms are not described) for four days before he

"felt better."  ECF No. 1 at 9.  On these facts, Smith has not plausibly alleged a serious medical

condition.  *See Hainey v. Carney*, No. 22-1387, 2022 WL 1308510, at *6 (E.D. Pa. May 2, 2022)

14

("Hainey's claims concerning Covid-19 are vague.  While Hainey alleges that he tested positive for Covid-19, he does not allege the extent to which the virus affected him, what his symptoms were, and what medical care he required to treat those symptoms that he is claiming he did not receive.  Absent additional information, it is unclear that Covid-19, as it affected Hainey, presented a serious medical need." (internal citation omitted)).

Even assuming that Smith's medical need was "serious," his complaint fails to allege the requisite personal involvement and behavior on the part of defendants constituting deliberate indifference to that need.  Indeed, Smith simply does not address this element of his claim in the complaint.  He pleads only that "when [he] was sick and complaining no one came to [his aid]." ECF No. 1 at 9.  This allegation does not support a claim that defendants acted with a culpable state of mind.  *See Jacobs*, 2022 WL 4225621, at *3 (deliberate indifference claim dismissed where plaintiff "has not alleged any facts about any serious medical needs or vulnerabilities he may have, nor has he alleged adequately that the City of Philadelphia had a policy or custom regarding COVID-19 protocols that amounted to deliberate indifference to his health, safety, or serious medical needs"); *Chapolini*, 2022 WL 815444, at *16 ("Chapolini has not tied any of his allegations to any defendant.  Instead, he states generally that medical and/or correctional staff refused the complaints but does not allege any specific individuals involved with the refusals.").  Thus, Smith has not established that defendants were deliberately indifferent to his serious medical need and this claim must be dismissed.

For these reasons, Smith's claims are dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).  However, because the Court cannot state that amendment would be futile, this dismissal is without prejudice to the filing of an amended complaint within 60 days of this Opinion. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims

dismissed on screening should generally be granted unless amendment would be inequitable or futile).

## IV.    CONCLUSION

For the reasons stated above, Smith's motion to proceed IFP (ECF No. 3) is granted, and his complaint (ECF No. 1) is dismissed with prejudice as against the Jail, and without prejudice as against the remaining defendants.  Smith may file an amended complaint within 60 days of the date of this Opinion.  An appropriate Order follows.


Dated: June 27, 2025                                  */s/ Claire C. Cecchi*
                                                      _____
                                                      **HON. CLAIRE C. CECCHI**
                                                      **United States District Judge**